Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Michael T. Mason | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 8003 | **DATE** | 4/24/2002 |
| **CASE TITLE** | Bob J. Mirza vs. Jo Anne B. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's motion for summary judgment [17-1] and reverse or remand the previous administrative decision [17-2] is granted and defendant's motion for summary judgment [19-1] is denied. It is hereby ordered that this matter is remanded to the Commissioner for further proceedings consistent with the attached Memorandum Opinion and Order. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | APR 25 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | 26 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 4/24/2002 | |
| | | 02 APR 24 AM 11:57 | date mailed notice | |
| KF | courtroom deputy's initials | | KF | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BOB J. MIRZA | ) |
| Plaintiff, | ) |
| vs. | ) No. 00 C 8003 |
| JO ANNE B. BARNHART, Acting Commissioner of Social Security | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

The plaintiff, Bob J. Mirza, has brought a motion for summary judgment seeking judicial review of the final decision of defendant Jo Anne B. Barnhart,[1] who denied his claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423(d), 1382(c). Plaintiff now appeals that decision in federal court as permitted by 42 U.S.C. §§ 405(g) and 1383(c)(3), which grant federal courts the power to review the Social Security Commissioner's final decisions. For the foregoing reasons the Court remands the cause for further proceedings, consistent with this opinion.

---

[1] At the time this matter was filed, the Commissioner of Social Security was Larry G. Massanari.



**PROCEDURAL HISTORY**

Mirza filed for DIB and SSI benefits on September 11, 1995, asking for a period of disability dating back to December 1, 1994 due to arthritis in his shoulders and a back injury. (R. 63-67, 93). His claim was denied initially and on reconsideration. (R. 71-74, 83-88). Mirza filed a request for a hearing on July 17, 1996 and a hearing was held before Administrative Law Judge ("ALJ") William E. Kumpe, which was continued so Mirza could retain counsel. (R. 29-35). On April 7, 1998, Mirza, represented by counsel, testified in a disability hearing before ALJ Lloyd Kelley III regarding the denial of his claim for SSI and DIB. (R. 36-62). On July 29, 1998, ALJ Kelley issued a written opinion denying Mirza's claim. (R. 14-29). The ALJ concluded that Mirza retained the residual functional capacity[2] ("RFC") for medium work and was capable of returning to his past relevant work ("PRW") as a punch-press operator as it is frequently performed in the national economy. (R. 19). Thus, ALJ Kelley concluded Mirza was not disabled as defined under the Social Security Act. (R. 19-21). Mirza filed a timely request for the Appeals Council to review the ALJ's decision on September 1, 1998 (R. 12-13), which the Appeals Council denied on October 27, 2000, stating that there was no basis under the Social Security Administrations regulations to grant Mirza's request for review of the ALJ's decision. (R. 4-5). The Appeals Council's denial of review made ALJ Kelley's decision the final decision of the Commissioner of Social Security. See *Zurawski v. Halter*, 245 F.3d 881 (7th Cir. 2001); *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994); 20 C.F.R. § 404.981

---

[2] "Residual functional capacity" is that which a claimant can still do despite his physical and mental limitations. *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999); 20 C.F.R. § 404.1545(a).

2

**PLAINTIFF'S TESTIMONY**

At the time of the hearing before the ALJ, plaintiff was a sixty-five year old man who had a sixth grade education from schooling in Iraq. (R. 42). He testified that he stopped working full-time as a punch-press operator in January, 1991 and then worked part-time jobs from February, 1992 to March, 1994. (R. 44). Plaintiff had worked approximately 24 years as a punch-press operator. (R. 44). When asked by the ALJ to state his chief reasons for his inability to work, Mirza said he suffered from pain in both of his shoulders and lower back. (R. 45-46). According to Mirza, if he lifted 10 pounds and held it for a few minutes, he would experience pain in his shoulders and would be prone to dropping the object. (R. 46). He explained that he originally hurt his back lifting a coil in a factory around 1979 and at the time of the hearing he experienced back pain on a daily basis – but was "okay" if he did not lift anything. (R. 47). His back problem was also aggravated by cold wind that blows in through his bedroom window while he is sleeping. (R. 47). Mirza considers "heavy" lifting to be anything more than 10 pounds. (R. 47). He has not been to the doctor in the two years prior to the hearing because he did not have insurance and he had just received a Medicare card that became valid six days prior to the hearing[3] (R. 48).

---

[3] Initially at the hearing, plaintiff's counsel suggested to the ALJ that additional medical exams were necessary in this case (R. 39), because Mirza had not sought medical treatment since March 20, 1996. (R. 39). ALJ Kelley indicated to counsel that the initial burden was on the plaintiff to establish evidence of a disability and that he was not inclined to order updated consultative exams in light of this burden. (R. 39). However, ALJ Kelley did agree to keep the record open for an additional 30 days with the possibility for extension so that Mirza could seek updated medical examinations and x-rays. (R. 40). Mirza's counsel sent a letter to ALJ Kelley on May 1, 1998 indicating that Mirza had been unable to arrange for an examination on his Medicare card to date and renewed her initial request for ALJ Kelley to order an orthopedic CE with x-rays. (Pl. Rep. to Def. Resp. to Pl. Mot. Summ. J. Ex. A.). Nothing in the letter indicates that it was not possible for Mirza to obtain a medical exam; only that he was unable to secure an examination as of the date of the letter. Thus, Mirza should have followed ALJ Kelley's instructions (R. 41), and requested additional time to secure the medical examinations rather than sending a letter asking the ALJ to order CE's on his behalf, which the ALJ declined to do.

3

Mirza stated he had surgery on his hand in 1985 and 1989 (R. 49), and his hands would start to swell if he used a screwdriver for an hour. (R. 50). With respect to his ability to sit and walk, he testified that his right foot would bother him when he walked (R. 49), and he could sit for 1 to 1 ½ hours without his back bothering him. (R. 51). Mirza does not take any prescription medication, but takes Advil as needed for pain. (R. 51). He walks to the grocery store and has to make two trips due to the fact he can only carry grocery bags that are lightweight. (R. 51). Mirza said he is 95% blind in his right eye (R. 51), and when asked by the ALJ whether he would be able to perform his past work, replied, "I don't think so." (R. 52). His hobbies are playing pool and drinking whiskey. (R. 54). He drinks when he plays pool which is usually the first week of every month as he gets his "check" in the mail. (R. 54, 58-59). Plaintiff said he only drinks about twice a week as he has a limited amount of money. (R. 55). He also saves some of his money to support his pack-a-day cigarette habit. (R. 58-59).

Mirza had a part-time job that he quit in 1994 because his employer asked him to clean the bathroom.[4] (R. 56). Regarding household activities, he does his own cooking, washes his dishes by hand, sweeps the floor, and does his laundry. (R. 57-58).

## PLAINTIFF'S MEDICAL EXAMINATIONS

At the behest of Social Security Administration ("SSA"), a physician[5] from Diversey Medical Center in Chicago examined plaintiff on October 16, 1995 for the purposes of preparing arthritic and spinal disorders reports (hereinafter, "Diversey Medical Reports"). (R. 143-46). The arthritic diagnosis was backache, ventral hernia,

---

[4] There is no indication however, that Mirza quit his job because he was unable to work.
[5] The name of the physician at the Diversey Medical Center who examined the plaintiff is not discernible from the medical reports in the administrative record.

4

arthritis, and alcoholism. (R. 143). The physician found Mirza's grip strength to be a 4/5, with 5 being normal. (R. 143). Handling (gross manipulation) and fingering (fine manipulation) were also 4/5, with 5 being normal. (R. 143). Ambulation was normal and there was no atrophy or inflammation of the joints. (R. 143-44).

The spinal disorder report prepared by the Diversey physician listed a diagnosis of backache with a possible herniated disc of the back. (R. 145). Mirza was also noted to have pain in the lumbar spine with no sensory loss or reduction in reflexes. (R. 145). A Lasegue's[6] test was positive on his right side. (R. 146). The following findings were made as to Mirza's range of motion in his spine: (1) Cervical Spine: flexion 30/30 degrees, extension 25/30 degrees; (2) Lumbosacral Spine: flexion 60/90 degrees, extension 10/30 degrees. (R. 146). No x-rays were ordered and no other radiological information was utilized in the preparation of these reports. (R. 145-46). In conclusion, the Diversey Medical Center physician found Mirza to be "unable to perform" work-related activities. (R. 146).

Additionally, Dr. Rochelle Hawkins, an internal medicine specialist, examined Mirza on October 17, 1995 at the behest of SSA. (R. 147-151). Mirza's chief complaint was that he needed more money because he was laid off work, he only receives $370 per month from Public Aid, and his rent was $400 per month. (R. 147). The final diagnosis was "acne, decreased vision, and Plaintiff needs more money as he has been laid off since 1985." (R. 147). Dr. Hawkins found Mirza's musculoskeletal system to be unremarkable, except for some acne to the face. (R. 149). He was found to be

---

[6] While supine, the knee is extended and the leg elevated by flexing the hip. "Positive" is a term used to indicate that pain in the sciatic nerve is produced. ATTORNEYS MEDICAL DESKBOOK § 11:2 (3d ed. 1993 & Supp. 2001).

5

capable of performing at full capacity all the activities of daily living along with the ability to repeatedly lift over 50 pounds during an 8-hour day, 5 days per week. (R. 150). Plaintiff's mental status was noted to be normal. (R. 150).

In addition, Dr. John O'Donnell, a psychiatrist, examined Mirza on October 27, 1995. (R. 152-60). Dr. O'Donnell made the following diagnosis: Axis #1: (a) Alcohol abuse/dependence in partial remission (in denial), (b) Marijuana abuse, past history. Axis #2: Personality Disorder Not Otherwise Specified ("NOS"). (R. 157). Mirza told Dr. O'Donnell the reason he could not work was because of the pain in his back and shoulders and his feet hurt when he walked. (R. 157). Dr. O'Donnell found Mirza had little motivation to change and set his prognosis as "guarded and poor." (R. 158).

A mental RFC assessment of Mirza was prepared on November 15, 1995 by Donald Cochran, Ph.D., who found him to be "moderately limited for detailed work but [] capable of simple routine tasks." (R. 163). Dr. Cochran also found him to be "moderately limited" in (1) the ability to carry out detailed instructions, and (2) the ability to maintain attention and concentration for extended periods of time. (R. 161). A Psychiatric Review Technique form was also completed by Dr. Cochran on November 15, 1995 where he listed Mirza as having Personality Disorder NOS as well as a Substance Addictive Disorder in partial remission as a result of his alcoholism. (R. 170-71). As to plaintiff's functional limitations, Dr. Cochran found him to have "moderate" difficulties maintaining social functioning, and a "slight" restriction on daily activities. (R. 173).

Mirza was then examined at the behest of SSA by Dr. James Runke, an internal medicine specialist on March 20, 1996. (R. 183-89). According to Dr. Runke, Mirza's

6

chief complaints related to his shoulder, back, and eyes (R. 183), but he reported fairly good improvement with the use of Advil. (R. 183-84). He denied any alcohol, drug, or psychiatric problems and said he did not smoke cigarettes. (R. 184). Dr. Runke's examination of Mirza's back revealed forward flexion of 65/90 degrees and extension of 15/30 degrees in the lumbosacral spine, limited by pain. (R. 185, 187). Straight-leg raising[7] was associated with increased back discomfort at 50 degrees of leg elevation bilaterally. (R. 185). Dr. Runke further found Mirza able to walk on his toes and heels without difficulty and able to squat half way toward the floor and rise again. (R. 185). In addition, Dr. Runke's musculoskelatal examination of plaintiff revealed pain at both shoulders without instability, normal bilateral handgrip strength (5/5) and finger manipulation, and no tenderness or spasm in the low lumbar spine region. (R. 185, 187). Dr. Runke found no evidence of cervical or lumbar nerve root compression or peripheral neuropathy. (R. 185). Dr. Runke's clinical impression of Mirza was a "[h]istory of chronic recurrent lower back discomfort, likely associated with repetitive use syndrome."[8] (R. 185). An x-ray of Mirza's lumbosacral spine was taken on May 8, 1996 and interpreted by radiologist Eugene Kovalsky, M.D. (R. 190). According to Dr. Kovalsky, the x-ray showed Mirza had normal osseous and joint structures, his intervertebral spaces were well maintained, and his posterior spinal elements appeared

---

[7] This test is the same as the Lasegue's test. See, ATTORNEY'S MEDICAL DESKBOOK at § 11:2.

[8] Because it lacks specificity, repetitive use syndrome is a category of disorders rather than a diagnosis. The term implies nothing about the etiology, pathology, or anatomical aspects of the disorders it describes, but refers to musculoskeletal pain caused by prolonged static loading or repetitive movement brought on by repetitive work patterns that strain tissues sufficiently to produce injury. Besides having to perform a repetitious activity in their work, patients with repetitive use syndromes often have jobs that require forceful exertion, the maintenance of a sustained or awkward posture, or exposure to cold or vibration. ATTORNEYS' TEXTBOOK OF MEDICINE Pt. 13, Ch. 176 (3d ed. 2002).

7

to be normal. (R. 190). The final impression was "negative lumbosacral spine." (R. 191).

## VOCATIONAL EXPERT

At the hearing before the ALJ, vocational expert ("VE") Gleeann Kehr testified. ALJ Kelley asked the VE if the plaintiff had any skills that would be transferable to light work. (R. 60). The VE replied that Mirza had no transferable skills since all of his jobs have been in unskilled positions. (R. 60). The VE also testified that Mirza's previous position as a punch-press operator was performed at the medium, heavy, and very heavy exertional levels in the national economy. (R. 60). The VE further stated that the Department of Transportation Guidelines qualify the exertional level for a punch-press operator at medium.[9] (R. 60).

## STANDARD OF REVIEW

In reviewing the final decision of the Commissioner, this court must accept as conclusive the findings of fact made by the ALJ if they are supported by substantial evidence. 42 U.S.C. § 405(g). "Although a mere scintilla of proof will not suffice to uphold the Commissioner's findings, the standard of substantial evidence requires no more than 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) *quoting, Richardson v. Perales*, 402 U.S. 389, 401 (1972). If the record contains such support,

---

[9] Medium work is defined as lifting no more than 50 pounds at a time and frequently lifting up to 25 pounds. 20 C.F.R. § 404.1567(c); *Limberopolous v. Shalala*, 17 F.3d 975, 978 (7th Cir. 1994). If someone can do medium work, he or she can also do sedentary and light work. 20 C.F.R. § 404.1567(c).

8

the court must affirm the decision of the Commissioner unless she has made an error of law. *Veal v. Bowen*, 833 F.2d 693, 696 (7th Cir. 1987). This court may not reweigh the evidence, re-evaluate the facts, or substitute its own judgment in determining whether a claimant is or is not disabled. *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ). *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). This court may not reconsider credibility determinations by the ALJ. *Prince v. Sullivan*, 933 F.2d 598, 601-02 (7th Cir. 1991). Thus, a plaintiff's proof must show that no reasonable person, based upon the record as a whole, could have found as the Commissioner did. *Rucker v. Shalala*, 894 F. Supp. 1209, 1213-14 (S.D. Ind. 1995).

## I. ANALYSIS

Mirza argues that the ALJ's decision that he retains an RFC to perform the full range of medium work and can perform his PRW as a punch-press operator is unsupported by substantial evidence and is premised upon legal error. Mirza takes particular issue with the ALJ's failure to explicitly address the Diversey Medical Reports and Dr. O'Donnell's finding that plaintiff suffers from a personality disorder NOS, and his apparent reliance on Mirza's lack of medical treatment as evidence that he is not disabled.[10] It is the plaintiff who has the burden of demonstrating "he is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or is expected to last for at least twelve months, and which renders the claimant unable to

---

[10] Since the court is remanding this case back to the Commissioner, we decline to reach plaintiff's argument that the ALJ incorrectly relied on his lack of medical treatment.

9

engage in any substantial gainful activity." *Williams v. Apfel*, 48 F. Supp. 2d. 819, 823 (N.D.Ill., May 6, 1999) *citing*, 42 U.S.C. § 423(d)(1)(A).

To determine whether an adult claimant is disabled under the Act and thus entitled to benefits, the ALJ must undertake a five-step process which assesses whether the individual is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental ailment. 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3)(A). Furthermore, an individual is considered disabled only if she is neither able to perform any of her previous work or any other work existing in significant numbers in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382(c)(a)(3)(B); 20 C.F.R. §§ 404.1520(e), (f), 416.920(e)(f). In making his determination, ALJ Kelley applied the standard five-step process set forth in the regulations, which required him to evaluate, in sequence:

(1) Is the claimant presently unemployed?

(2) Is the claimant's impairment or combination of impairments severe?

(3) Do his or her impairments meet or exceed any of the specific impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 which the [Commissioner] acknowledges to be conclusively disabling?

(4) If the impairment has not been listed by the [Commissioner] as conclusively disabling, given the claimant's residual function capacity, is the claimant unable to perform his or her past relevant work?

(5) Is the claimant unable to perform any other work in the national economy given his or her age, education or work experience?
*Ward*, 2000 WL 1029170 at *4 *citing*, 20 C.F.R. § 416.920(a)-(f); *Young v. Secretary of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Under the five part sequential analysis, "[a]n affirmative answer leads to either the next step, or on Steps 3 and 5, to a finding that the claimant is disabled. A

10

negative answer at any point, other than Step 3, stops [the] inquiry and leads to a finding that the claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985) *citing*, 20 C.F.R. § 404.1520 (1985). In the instant case, ALJ Kelley found plaintiff not disabled at Step Four.

In undertaking the five-step process, ALJ Kelley first determined that Mirza was not currently gainfully employed since the alleged onset date of December 1, 1994 (Step One). (R. 18). Next, the ALJ determined that the medical evidence established that Mirza suffered from "chronic back strain which restricts his capacity to perform strenuous work activities and that Plaintiff has a history of alcohol abuse which is currently in remission." (Step Two). (R. 18). As a result, ALJ Kelley determined that Mirza did not have an impairment or combination of impairments listed in or medically equal to one listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (Step Three). (R. 18). At Step Four, the ALJ determined that in spite of his medical ailments, Mirza still maintained an RFC for medium work and could perform his PRW as a punch-press operator. (R. 19).

## A. ALJ'S FAILURE TO DISCUSS MEDICAL REPORT IN DECISION

Mirza argues that in failing to acknowledge in any way the Diversey Medical Reports which found him unable to perform work related activities, the ALJ committed legal error requiring a remand.[11] "The decision of the ALJ must be based on consideration of all relevant evidence, and the reasons for his conclusions must be stated in a manner sufficient to permit an informed review. *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984) (internal citations and quotations omitted). The Seventh

---

[11] Statements by medical sources that a claimant is "unable to work" are not dispositive and do not direct the determination or decision of disability. 20 C.F.R. §§ 404.1527(e)(3); 416.927(e)(3); SSR 96-5p.

11

Circuit has held that "all medical evidence that is credible, supported by clinical findings, and relevant to the question at hand should be considered and discussed by the ALJ." *Id.* However, an ALJ "need not provide a written evaluation of every piece of evidence that is presented." *Pugh v. Bowen*, 870 F.2d 1271, 1278 (7th Cir. 1989). "Instead, the ALJ must consider and discuss the important evidence." *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989). The Commissioner argues that the Diversey Medical Reports do not constitute a complete new line of evidence and therefore, did not have to be specifically mentioned in the ALJ's opinion. Furthermore, the Commissioner argues that substantial evidence in the record supports the ALJ's conclusion.

The Court agrees with the Commissioner that ALJ Kelley did not have to discuss every piece of evidence submitted and that the Diversey Medical Reports do not constitute a new line of evidence. However, we find that the ALJ failed to satisfy the articulation threshold which "emphasize[s] that the [Commissioner's] decision must be based on consideration of *all* relevant evidence and the reasons for [her] conclusion must be stated in a manner sufficient to permit an informed review." *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988).

In determining that Mirza was not disabled and was capable of performing his PRW as a punch press operator, ALJ Kelley discussed the medical reports of two state agency physicians, Dr. O'Donnell and Dr. Runke.[12] In his decision, the ALJ noted that Dr. Runke found plaintiff able to move about the examining room without difficulty,

---

[12] ALJ Kelley did not mention in his decision the medical reports of Dr. Hawkins, the Mental RFC Assessment and Psychiatric Review Technique form completed by Donald Cochran, PhD, or the Physical RFC Assessments completed by Drs. Patey (11/95) and Madala (05/96).

12

walk on his heals and toes, and his gait to be normal. (R. 19). ALJ Kelley also cited Dr. Runke's findings that plaintiff had normal bilateral grip strength, a full range of joint motion with the exception of the lumbar spine, forward flexion to 65 degrees, extension to 15 degrees with complaints of pain, and a negative x-ray of the lumbosacral spine. (R. 19). He noted Dr. Runke's medical conclusion to be "low back pain and strain as a result of [plaintiff's] previous occupation." (R. 19).

As noted earlier, the Commissioner is not required to evaluate every piece of evidence presented, but she must articulate her analysis of "considerable evidence [which] is presented to counter the agency's position." *Burnett v. Bowen*, 830 F.2d 731 (7th Cir. 1987) *quoting, Orlando v. Heckler*, 776 F.2d 209 (7th Cir. 1985). While the court finds that there are many similarities in the findings of Dr. Runke and those in the Diversey Medical Reports, it does not alleviate the fact that ALJ Kelley failed to articulate his reasons for ignoring the Diversey Medical Reports' findings that Mirza was unable to work because he suffered from a backache, possible herniated disc, ventral hernia, arthritis, and a positive Lasegue's test.

Furthermore, the Commissioner's decision must stand or fall with the reasons sets forth in the ALJ's decision. "If the decision on its face does not adequately explain how a conclusion was reached, that alone is grounds for a remand. And that is so even if the [Commissioner] can offer proper post hoc explanations for such unexplained conclusions." *Williams v. Bowen*, 664 F. Supp. 1200, 1207 (N.D. Ill. 1987) (citations omitted). Therefore, the many ex post facto reasons the Commissioner has offered for the ALJ's failure to minimally articulate his reasons for ignoring the Diversey Medical Reports are unavailing.

13

## B. ALJ'S FAILURE TO DISCUSS MIRZA'S ALLEGED MENTAL IMPAIRMENT

Similarly, Mirza argues that ALJ Kelley completely ignored Dr. O'Donnell's conclusion that he suffered from a personality disorder NOS and that his prognosis was "guarded and poor." (R. 157-58). Plaintiff characterizes the ALJ's silence as implying one of two possible scenarios: (1) ALJ Kelley impermissibly ignored the evidence of plaintiff's personality disorder or (2) he impermissibly played amateur doctor and decided based on his own mental health conjecture that plaintiff's personality disorder was insignificant. The Commissioner counters that ALJ Kelley did not disregard Dr. O'Donnell's report in its entirety–rather, the ALJ considered the report in conjunction with the other record evidence and reasonably determined that Mirza did not have an emotional impairment which significantly limited his ability to perform work-related activities. In the alternative, the Commissioner argues that ALJ Kelley's failure to address Dr. O'Donnell's diagnosis of a personality disorder amounts to harmless error.

"[I]f a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler,* 766 F.2d 284, 287 (7th Cir. 1985). However, an ALJ may not ignore evidence that suggests an opposite conclusion. *Taylor v. Schweiker,* 739 F.2d 1240, 1243 (7th Cir. 1984). ALJ Kelley's rather brief reference to the report written by Dr. O'Donnell, the only psychiatrist[13] to examine the plaintiff,

---

[13] SSR 96-6p holds that State doctors are "experts in the evaluation of the medical issues in disability claims under the Act... and [although] administrative law judges... are not bound by findings of State agency or other program physicians and psychologists, they may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSA regulations also generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist. 20 C.F.R. § 404.1527(d)(5).

14

ignored any reference to his diagnosis that he suffered from a personality disorder NOS.[14] Although ALJ Kelley may have considered and rejected the evidence for sound reasons, the ALJ's failure to comment on Dr. O'Donnell's diagnosis of a personality disorder leaves this court with a record insufficient for meaningful review. In other words, it is entirely possible that ALJ Kelley may have legitimately relied on *all* of the evidence in arriving at his conclusion that Mirza could still perform his PRW, but it is impossible for this court to tell from his decision whether he actually did so.

As previously mentioned, at least a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which evidence is presented to counter the agency's position. The ALJ's failure to give such an assessment with respect to Dr. O'Donnell's diagnosis of a personality disorder and his failure to address the Diversey Medical Reports in the instant case necessitates that we remand this case.[15] Therefore, we remand this case to the ALJ to reconsider his Step Four analysis of plaintiff.

On remand, the ALJ is directed to specifically address the Diversey Medical Reports and Dr. O'Donnell's diagnosis of a personality disorder as to whether these

---

[14] Even though Dr. Hawkins, Dr. Runke, and Donald Cochran Ph.D. opined as to Mirza's mental status, the ALJ neglected to identify any of their findings in his decision. Moreover, even if ALJ Kelley had identified the individual mental status findings of Dr. Hawkins and Dr. Runke and those of Dr. Cochran, he would still be compelled to explain why he credited part of Dr. O'Donnell's opinion, but chose to give less or no weight to his personality disorder diagnosis—especially since Dr. O'Donnell was the only psychiatrist to examine plaintiff.

[15] The Commissioner asserts that state psychologist Dr. Cochran acknowledged Mirza's personality disorder and opined he could do simple work. However, ALJ Kelley neglected to even discuss Dr. Cochran's report in his decision leaving this court with no way to trace the path and reasoning of the ALJ so as to conclude that the ALJ created a logical bridge between the evidence and the result. *See Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).

15

affect plaintiff's ability to perform his PRW as a punch-press operator.[16] If, on consideration of this evidence, the ALJ determines that Mirza does not retain the RFC to perform his past relevant work, he is further directed to proceed to Step Five of the sequential process and determine whether there are other jobs existing in significant numbers in the national economy that plaintiff is able to perform. The ALJ is free to seek additional evidence and/or call a vocational expert if he feels it is necessary. It is so ordered.

ENTER:

*Michael T. Mason*

MICHAEL T. MASON
United States Magistrate Judge

Dated: April 24, 2002

---

[16] The court notes that when the Commissioner undertakes an analysis of whether a claimant who has a mental/emotional impairment can perform his past relevant work, "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." SSR 82-62.

16